# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1743V

| | |
|---|---|
| CASAUNDRA MULLEN,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: September 28, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Austin Joel Egan*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT AND RULING ON ENTITLEMENT [1]

On December 3, 2020, CaSaundra Mullen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on September 21, 2018. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that Petitioner has more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and that Petitioner has satisfied the other requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

### I.     Relevant Procedural History

On October 21, 2022, about 22 months after the case was initiated, Respondent filed his Rule 4(c) Report, arguing that Petitioner could not meet the Vaccine Act's six-months "severity" requirement. Rule 4(c) Report (ECF No. 31) at 6. In reaction, Petitioner filed a Brief on February 1, 2023 (ECF No. 36) ("Br."), and Respondent filed a supplemental brief on March 15, 2023 (ECF No. 37) ("Opp."). The matter is now ripe for adjudication.

### II.    Factual History

Petitioner received the flu vaccine in her right arm during an OBGYN visit on September 21, 2018. Ex. 1 at 2. Petitioner recalled that the injection was "more painful than usual," and that her pain progressed over the next 24 hours. Ex. 12 at ¶3.

Petitioner first sought treatment for right shoulder pain at urgent care on October 14, 2018 (23 days after her vaccination). Ex. 2 at 624. Petitioner complained of pain after her flu shot, as well as an inability to use her arm for daily activities. *Id*. at 626. She was prescribed Norco and referred to an orthopedist. *Id*. at 627.

On October 19, 2018, Petitioner presented to orthopedist Dr. Siatta Dunbar, complaining of right shoulder pain that "started about 48 hours after doing a flu shot." Ex. 2 at 608-09. She was diagnosed with SIRVA, given a steroid injection, and referred to physical therapy. *Id*. at 609.

On November 29, 2018, Petitioner sought a second opinion from orthopedist Dr. Loren Vorlicky. Ex. 8 at 38. She again reported pain that began within 48 hours after her flu shot and worsened, affecting her sleep and her activities of daily living, including dressing, maintaining her hair, and lifting her toddler. *Id*. Dr. Vorlicky diagnosed her with arthrofibrosis and recommended a manipulation under anesthesia, followed by use of a home CPM machine and physical therapy. *Id*. at 39.

Petitioner underwent surgery on December 5, 2018, which consisted of a right shoulder manipulation and glenohumeral joint Kenalog injection under anesthesia. Ex. 8 at 26. She presented for an initial physical therapy evaluation on the same day. *Id*. at 33. Petitioner's physical therapy treatment plan included therapy several times per week for four to eight weeks. *Id*. at 34. She had a total of six physical therapy treatments through December 14, 2018. *Id*. at 23-33. At her last session on December 14, 2018, Petitioner

continued to have range of motion deficits, pain, and weakness in her shoulder. *Id*. at 23. The plan was to continue treatment according to the plan of care. *Id*. at 24.

On January 8, 2019 (three months and 18 days after her vaccination), Petitioner returned to Dr. Vorlicky for a post-surgery follow-up. Ex. 8 at 21. Petitioner reported that although she had finished physical therapy and use of her CPM machine, she continued to do stretching and exercises on her own. *Id*. She reported continuing pain and stiffness that "still inhibit[ed] her daily function," but that "she just pushed through and get[s] through the day despite the pain and stiffness." *Id*. Dr. Vorlicky encouraged Petitioner to follow up in one month, or at any time that her pain or stiffness increased. *Id*. at 22. Dr. Vorlicky noted that Petitioner understood "that there may be quite some time" before she recovered. *Id*. at 21.

Petitioner did not seek further treatment for her shoulder pain until December 12, 2019 (eleven months later) when she returned to Dr. Vorlicky with complaints that her shoulder had started "slowly to hurt and tighten up over the last three months." Ex. 8 at 14. Dr. Vorlicky diagnosed a "recurrence of a frozen shoulder," administered a cortisone injection, and referred Petitioner back to physical therapy. *Id*. at 15.

During the intervening period, Petitioner sought treatment on several occasions for other medical issues, including OBGYN care, anxiety and depression, headache and heart symptoms, and appendicitis, but did not report or receive treatment for shoulder pain. *See* Ex. 4, Ex. 7 at 40. Petitioner has stated that her shoulder deficits "never went away fully." Ex. 14 at ¶2. In her affidavit, she reported that by "early summer 2019, [she] noticed that her right shoulder was starting to hurt again," her "sleep was starting to be disrupted again, and the constant ache, even when not using her right arm, returned." *Id*. at ¶10. She reported that she was "not able to join her summer volleyball league" that summer, but that she did not seek further treatment until her pain was worse than it was previously. Ex. 14 at ¶3, 5.

Petitioner also states that she was hindered in seeking medical treatment for her shoulder pain in the summer of 2019 due to medical bills incurred for her husband's heart condition. Ex. 14 at ¶3.

### III.     Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at

*4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering

4

such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Finding of Fact - Severity

The issue in this case is whether Petitioner has provided preponderant evidence that her vaccine injury continued for more than six months, as required by 42 U.S.C. ¶300aa-11(c)(1)(D)(i). Respondent argues that Petitioner has not satisfied the severity requirement because Petitioner treated her shoulder pain for just under four months, with no further evidence of injury until experiencing "distinct and unrelated" shoulder symptoms eleven months later. Resp. at 7. Respondent supports his argument by noting that Petitioner sought treatment for several other medical issues during the eleven-month interval. *Id.*

Because Petitioner was vaccinated on September 21, 2018 (Ex. 1 at 2), she must establish that her residual symptoms continued until at least March 21, 2019 to satisfy the severity requirement. There is no dispute that in the four months after her vaccination, Petitioner undertook a course of treatment that included prescription medications, a cortisone injection, a manipulation under anesthesia, and physical therapy. Ex. 2 at 609, 627; Ex. 8 at 23-39. On January 8, 2019, three months and 18 days after her vaccination, Petitioner visited her orthopedist for a follow-up visit. Ex. 8 at 21. At that visit, Petitioner reported continuing pain and stiffness that "still inhibit[ed] her daily function," but that "she just pushes through and get[s] through the day despite the pain and stiffness." *Id*. Petitioner was informed that her symptoms could continue for "quite some time" and was encouraged to return for another follow up appointment in one month, or at any time that she experienced a worsening of symptoms. *Id*. at 21-22. This record confirms both that Petitioner continued to have significant shoulder symptoms on that date, and that her doctor anticipated that those symptoms would likely linger for another one to two months.

Petitioner did not return for shoulder treatment December 12, 2019 (eleven months later) when she returned to her orthopedist with complaints that her shoulder "began slowly to hurt and tighten up over the last three months." Ex. 8 at 14. She was diagnosed

with a "recurrence of a frozen shoulder," received a cortisone injection, and was referred back to physical therapy. *Id*. at 15. In her affidavits, Petitioner described her experience during the intervening period. *See* Ex. 12, 14. Petitioner acknowledges that she recovered fairly well after her initial treatment course, reaching a point where she was left with only "certain movements that caused pain," including lifting her son and reaching upward high enough to reach the high shelves in her cupboards. Ex. 12 at ¶9. She then stated that symptoms that had previously resolved began to return in early summer 2019, including sleep disruption and aching pain even without movement. *Id*. at ¶10. Petitioner explained that she did not seek care at that time for two reasons: her pain was not worse that it was previously and financial constraints due to her husband's medical treatment for a heart condition. Ex. 14 at ¶3. At some point in late 2019, her "shoulder stiffened up to the point that she sought medical treatment" after the parties' medical insurance deductible was met for the year. Ex. 12 at ¶10; Ex. 14 at ¶3.

Respondent argues that Petitioner's statements fail to reasonably explain the gap in treatment because Petitioner described her shoulder as starting to "hurt again" and because Petitioner sought other medical care during that period. Resp. at 7-9. He further argues that Petitioner's "affidavits' focus on pain occurring in 'spring and summer of 2019' also impl[ies] that Petitioner's pain did resolve at some point shortly after her shoulder manipulation" and that "her second occurrence of shoulder pain was caused by different movements than her original pain." *Id*. at 7-8. However, a careful reading of Petitioner's original affidavit clearly indicates that while she did experience a good recovery, she continued to experience some pain with certain movements and that her symptoms then worsened again to include sleep disruption, a constant ache without movement, and stiffness. *See* Ex. 12 at ¶9-10.

The record does not support the conclusion that Petitioner experienced a complete recovery, with no residual effects of her injury, within four months of vaccinaton. In fact, at the time of her January 8, 2019 orthopedist appointment, Petitioner's symptoms were significant, with pain and stiffness that still impacted her daily activities. Ex. 8 at 21-22. Her orthopedist asked her to follow up in one month – in February 2019 (which would have been nearly five months after her vaccination) - strong evidence that he expected her symptoms to continue at least that long. *Id*. He noted that Petitioner would continue doing exercises and stretches to maintain her range of motion and to strengthen her shoulder. *Id.* Further, he made sure to note that Petitioner understood that her symptoms could last for "quite some time," suggesting that he did not anticipate a full recovery in the very near future. *Id*. These facts make it more likely than not that Petitioner's symptoms continued at least through March 21, 2019, two months after her appointment with her orthopedist.

Respondent argues that Petitioner had "multiple OBGYN visits, a PCP visit, and two hospital visits" during the gap in treatment for her shoulder, during which "normal musculoskeletal exams were documented." Resp. at 7. He further notes that Petitioner's "monetary constraints would not preclude her from merely reporting her symptoms to a medical provider, particularly when she was already seeking medical care for other reasons." *Id.* On two of those occasions, Petitioner presented to the emergency room for treatment – once for headache, dizziness, and a sense of her heart racing, and once for appendicitis, leading to an appendectomy. Ex. 4 at 255, 269. At her appendicitis visit, the musculoskeletal exam noted "no obvious muscular asymmetry," without further detail. Ex. 4 at 280. She had one appointment to establish care with a primary care provider ("PCP") to receive treatment for worsening depression and anxiety and side effects of her previously prescribed medication. Ex. 7 at 39-40. The PCP recorded only "Extremities with normal C/C/E. Pulses 2+ throughout." *Id*. at 41. The remaining visits were for routine and non-routine gynecological care, which led to a gynecological surgery in December 2019. Ex. 4 at 248, 261-264, 286, 293-295, 297-298. The OBGYN records do not record any musculoskeletal exams.

Overall, these records reveal that Petitioner was seeking care for potentially urgent medical conditions. There are no corresponding records indicating that Petitioner also sought care for non-emergent conditions during the same period. Thus, while Respondent reasonably takes note of the fact that Petitioner was presented with opportunities to report her ongoing symptoms, I do not find on this record that the omission of mention of the symptoms mandates the finding that they did not exist.

Certainly, the lengthy gap in treatment – coupled with the vague association of Petitioner's December 2019 shoulder complaints to her original SIRVA over a year before – bears on damages. Although this is a surgery case, the record largely suggests that Petitioner was mostly recovered by sometime in the summer of 2019. Accordingly, Petitioner must take into account that course when determining what damages to seek. But I can find that the record preponderantly supports a finding of six months of severity.

## V.    Ruling on Entitlement

### a.  Requirements for Table SIRVA

Respondent has not contested Petitioner's proof on the specific elements of a Table SIVRA. Rule 4(c) Report at 6. In fact, Respondent states that "Petitioner satisfied the criteria set forth in the Table and QAI for SIRVA." *Id.*

In light of Respondent's position and the evidence of record, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### b. Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination in her on September 21, 2018 at a her doctor's office in Edina, MN. Ex. 1 at 2; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 13 at 2; *See* Section 11(c)(1)(E) (lack of prior civil award). And as noted above, severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
